**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| LUCY G. SIKES | CIVIL ACTION NO. 15-1864 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| EVEAR LOU SAMUEL AND TD AUTO FINANCE LLC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is an appeal by appellant Lucy G. Sikes ("Sikes"), the Standing Chapter 13 Trustee for the Western District of Louisiana, Shreveport Division. For the following reasons, the Bankruptcy Court's ruling is **AFFIRMED IN PART** and **REVERSED IN PART**.

**PROCEDURAL BACKGROUND**

This dispute arises out of a United States Bankruptcy Court decision that Sikes may not collect a trustee fee under 28 U.S.C. § 586(e)(2) on a payment of insurance proceeds to the secured creditor, TD Auto Finance LLC ("TD Auto Finance"), or on the La. R.S.13:3881(A)(7) exemption amount to the debtor, but that she may collect such a fee on any amounts distributed to unsecured creditors. See Record Documents 1-1 and 5. Sikes appealed the Bankruptcy Court's decision to this Court.

**FACTUAL BACKGROUND**

Sikes is the Standing Chapter 13 Trustee for the Western District of Louisiana, Shreveport Division. She is appointed by the United States Trustee's office to administer all cases filed under Chapter 13 of the Bankruptcy Code in an eight-parish area (covering the parishes of Bienville, Bossier, Caddo, Claiborne, DeSoto, Red

River, Sabine and Webster).

Evear Lou Samuel ("Samuel") filed a bankruptcy case on October 3, 2012, and the Chapter 13 plan was confirmed on December 19, 2012. The confirmed plan provided that trustee would make payment to TD Auto Finance for its secured claim on a 2008 Dodge Charger vehicle. The plan provided for a total payment to TD Auto Finance of $9,049.68. On March 24, 2015, the vehicle was involved in an accident and declared a total loss. Debtor filed a "Motion to Substitute Collateral and Utilize Insurance Proceeds," seeking authority for State Farm Insurance Co. to issue the insurance payment on the vehicle in the amount of $13,185.45 to Sikes. This request was in accordance with the Bankruptcy Court's policy requiring payment of insurance policy proceeds from destroyed property of the bankruptcy estate to the Trustee before remittance to the secured creditor.[1] Samuel further requested an order that after receipt of this payment, Sikes must (1) disburse a final payment to TD Auto Finance in the amount of $2,402.04 for the secured claim on the vehicle without collecting a fee; (2) disburse $7,500.00 to Samuel as exempt funds; and (3) use the remaining balance of the proceeds, approximately $3,283.41, to pay unsecured creditors pursuant to the confirmed plan.

After a hearing on the matter, the Bankruptcy Court issued such an order, ruling that Sikes was not entitled to a fee on the portions of the insurance proceeds that were used to pay TD Auto Finance or Samuel's exemption amount, but that Sikes was entitled to the trustee fee on the portion that was to be paid to unsecured creditors. See Record Document 1-1, citing In re James, 2015 Bankr. LEXIS 1795 (Bankr. W.D. La. 2015). Sikes

[1]Neither the Bankruptcy Court nor the parties to this case cited a standing order or other document detailing this policy, so it appears that the policy is simply an unwritten rule of the Bankruptcy Court in the Shreveport Division. See Record Documents 1, 5, 7.

appealed, arguing (1) that she is entitled to such a fee on the payments to both the secured and unsecured creditors and (2) that she should not be required to receive such insurance proceeds before paying them to the secured creditor or the unsecured creditors, particularly without compensation through the application of the statutory fee. See Record Document 5.

**LAW AND ANALYSIS**

**A. Jurisdiction**

The United States Bankruptcy Court has the authority to issue final orders pursuant to 28 U.S.C.§157(b). This United States District Court for the Western District of Louisiana, Shreveport Division has subject matter jurisdiction, pursuant to 28 U.S.C. § 158(a)(1) and 28 U.S.C.§1334(b), to hear appeals from a final order. This is an appeal of the final order entered from the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division on May 29, 2015 granting Samuel's Motion to Substitute Collateral and Utilize Insurance Proceeds. See Record Document 1-1.

**B. Standard of Review**

There are no factual disputes in this case. The issues presented on appeal are purely legal issues. A District Court reviews a Bankruptcy Court's conclusions of law under a de novo standard of review. See In re Hammons, 614 F.2d 399, 403 (5th Cir. 1980).

**C. Analysis**

Under 28 U.S.C. §586(e)(2), governing fees for the Trustee, "such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee." The questions in this appeal are (1) whether the Trustee is entitled to this statutory

fee on insurance proceeds owed to a secured creditor when a Bankruptcy Court policy requires that such proceeds first be paid to the Trustee before disbursement to a secured creditor or to unsecured creditors[2], and (2) whether the Court should reverse the Bankruptcy Court's policy of requiring the payment of insurance proceeds to the Trustee first.

On the first issue, Sikes argues that she is entitled to the statutory fee on the insurance proceeds paid to the secured creditor, TD Auto Finance. She does not argue that she is entitled to such a fee on the exemption amount paid to Samuel. See Record Document 5 at 11-12. She relies primarily upon the holding in Nardello v. Balboa (In re Nardello) 514 B.R. 105 (Bankr. D.N.J. 2014) and on policy reasons to support this argument. Samuel agrees that Sikes is entitled to the statutory fee on the payments to TD Auto Finance. On the second issue, both Sikes and Samuel agree that the Bankruptcy Court's policy requiring payment of the insurance proceeds to the Trustee before disbursement to a secured creditor is not required by the Bankruptcy Code and is contrary to the weight of authority from courts that have addressed the issue. They also agree, however, that the payments to the unsecured creditors need to pass through the trustee and are subject to the statutory fee. TD Auto Finance did not file a brief on appeal.

---

[2]Sikes agrees with the Bankruptcy Court's holding that Sikes is *not* entitled to a fee on the portion of the insurance proceeds paid to Samuel as the allowed exemption amount under La. R.S.13:3881(A)(7). See Record Document 5 at 11-12. Sikes and Samuel both agree that Sikes *is* entitled to a fee on the portion of the insurance proceeds in excess of the sum of the amount owed to TD Auto Finance and Samuel's exemption amount; this excess amount is to be paid to the unsecured creditors. See Record Documents 5 at 12-13, 7 at 7. Therefore, whether Sikes is entitled to a fee on either of these portions of the proceeds is not before the Court on appeal, leaving the sole question on the first major issue in this appeal the question of Sikes' entitlement to the portion of the insurance proceeds paid to the secured creditor, TD Auto Finance.

## I. Whether Sikes Is Entitled to a Fee under 28 U.S.C. § 586(e)

### a. Sikes Is Not Entitled to a Statutory Fee on the Insurance Proceeds Paid to the Secured Creditor Under the Plain Language of 28 U.S.C. § 586(e)(2).

Sikes argues that the statute's language stating that "all payments received" by the Trustee "under plans" in cases under Chapter 13 are subject to the Trustee fee mandates that she receive a fee for all amounts she actually receives, including the insurance proceeds involved here. 28 U.S.C. §586(e)(2); see Record Document 5 at 8-16. Unfortunately, neither the Bankruptcy Code nor the legislative history of the Code define these phrases. See Nardello, 514 B.R. 105 at 110; 8 Collier on Bankruptcy P 1302.05[1][b] (16th ed. rev. 2012). As this case involves construction of a statute, the Court must resort to the canons of construction. The most important canon of construction is what is sometimes referred to as the plain meaning rule: courts must give effect to the clear meaning of statutes as written. See Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992).

Sikes' argument fails to adequately address the fact that the statutory fee under 28 U.S.C. § 586(e)(2) only applies when payments are made to the Trustee "under plans." The terms of James' Chapter 13 plan do not provide for payment of the insurance proceeds from the destruction of collateral to the Chapter 13 trustee. Rather, the plan provides that "the debtor will maintain full coverage insurance against all loss on the property or properties that the lien or mortgage attaches to, and the lien holder or mortgagee shall be shown as the loss payee to receive payment in the event of loss." Record Document 2-2 at 13.

Thus, the plan's provisions actually dictate that in the event of the destruction of any

of the debtor's property that is subject to the security interest of a secured creditor, the secured creditor is to receive payment of insurance on the destroyed collateral. The plan makes no mention of payment of such insurance proceeds to the Trustee. The only reason the Trustee received the payment of the proceeds is that the Bankruptcy Court has a policy requiring payment to first be made to the Bankruptcy Trustee for accounting purposes prior to disbursement to the secured creditor. See Record Document 1-1. Because (1) the plain language of § 586(e)(2) provides for a fee to the Trustee only when payments are made "under plans" and (2) this plan contemplates direct payment to the secured creditor, the disbursement of the insurance proceeds from Sikes to TD Auto Finance does not qualify for the statutory Trustee fee.[3]

**b. Case Law Interpreting 28 U.S.C. § 586(e)(2) Supports the Conclusion that the Trustee Is Not Entitled to a Fee on the Insurance Proceeds Paid to the Secured Creditor.**

Sikes cites to several cases interpreting 28 U.S.C. § 586(e)(2) to support her position, particularly to Nardello, 514 B.R. 105 (Bankr. D.N.J. 2014). The Court finds

[3]Samuel actually argues on appeal that the payment of the insurance proceeds to the trustee is a payment under a plan because her modified plan "specifically referenced a motion (the Motion to Substitute Collateral and Utilize Insurance Proceeds) which in turn directed the Trustee to receive and disburse the insurance proceeds as indicated therein." Record Document 7 at 10. The Court has only been able to locate three references to this Motion in Samuel's plan. See Record Document 2-2 at 5, 7, 9. The first two of these references merely relate to attorney's fees for the motion, and the third simply states that the debtor is filing such a motion related to the insurance proceeds. See id. The contents of the motion are not contained in the plan itself. The Court is unwilling to find that a mere reference to a motion that in turn contemplates receipt of the insurance proceeds by the trustee trumps the express language in the same plan that addresses insurance payments for collateral. As discussed above, that language directly states that the secured creditor is to be the payee of such insurance proceeds, not the trustee. Additionally, the only reason the motion Samuel referenced provided for the trustee to receive the funds was the Bankruptcy Court's policy that the trustee had to receive the proceeds, a policy that this Court reverses in this judgment.

Nardello to be factually distinguishable and finds its legal conclusion unpersuasive, and instead finds McRoberts v. Associates Commer. Corp. (In re Derickson) 226 B.R. 879 (Bankr. S.D. Ill. 1998) to be both factually similar to the instant case and legally correct.

Nardello involved a Chapter 13 bankruptcy in which some co-owners of property with the debtor filed a motion for approval of the sale of real estate with the Bankruptcy Court. 514 B.R. at 106. The court entered an order authorizing the sale of the property and ordering the trustee to hold the proceeds of the sale pending further order of the court. See id. After the sale of the property, the Court allowed the debtor to voluntarily dismiss his bankruptcy case. See id. Eventually, the court allowed the trustee to pay the realtor who listed the property, the co-owners, and the debtor from these proceeds. See id. at 106-07. There was also a dispute over fees for the co-owners' attorney, and the trustee had to issue a check to the debtor and later request its return. See id. at 107. The trustee had possession of the funds from the sale for approximately three and one half months. See id. The Bankruptcy Court allowed the Trustee to collect a 6.6 percent fee on all payments received by the trustee (including the portion of the proceeds of the sale that belonged to the co-owners) over the debtor's objection. See id. On appeal, the district court affirmed the award of the fee to the trustee. See id. at 106.

Nardello is factually distinguishable from the instant case. There, the trustee was required to hold the proceeds of the sale of the property for several months, make distributions to several different parties at different times, and deal with the question of whether the co-owners' attorney was entitled to a fee. In the instant case, there are no such complications with respect to the portion of the proceeds to which the secured creditor is entitled: the trustee must simply transfer this portion of the insurance proceeds to the

secured creditor. Thus, the situation in Nardello presented a stronger argument from a policy perspective for payment of the statutory fee to the trustee than does the instant case. See Section III, infra.

Additionally, to the extent the Nardello court interpreted 28 U.S.C. § 586(e)(2), the Court finds its analysis unpersuasive. Though the Nardello court did recognize the statute's language stating that only payments received by the trustee "under plans" qualify for the payment of a fee to the trustee, the court never fully addressed this issue. See id. at 110-12, 116-17. Instead, though the court quoted the "under plans" language, it concluded that "amounts received under plans refers to all monies received by the standing trustee," essentially ignoring the "under plans" language. Id. at 111. The debtor argued that because a part of the proceeds of the sale were never the debtor's property at all but instead belonged to the co-owners, the payment of these proceeds could not possibly have been payments "under [a] plan." Id. at 116-17. The court concluded that the trustee "was entitled to calculate her percentage fee based on 'all payments received' regardless of the fact that Debtor was only entitled to half of the sale proceeds," again essentially omitting the "under plans" language from its consideration. Id. at 116. Thus, because of the factual differences between this case and Nardello and the fact that the Court finds Nardello's interpretation of 28 U.S.C. § 586(e)(2) to be inconsistent with the statute's plain language, the Court does not find the Nardello analysis persuasive.

McRoberts is more factually similar to the instant case, and the Court finds its legal analysis more persuasive. 226 B.R. 879. That case actually addressed two cases giving rise to the question of whether the Chapter 13 Trustee was entitled to receive the statutory fee. See id. at 880. Of the two, In re Murray is more factually similar to the instant case.

See id. There, the debtor owned an uninsured vehicle and the trustee force-placed insurance on it once the debtor filed bankruptcy. See id. at n.2. The debtor totaled the vehicle in a collision, and the insurance company paid the trustee the insurance proceeds for the vehicle. See id. at 880. The trustee planned to remit the proceeds to the secured creditor minus his statutory fee, and the secured creditor objected, arguing that the proceeds were not subject to the fee. See id. The Court held that the insurance proceeds were not subject to the trustee's statutory fee and ordered that they be turned over to the secured creditor without subtraction of the fee. See id. at 880-82.

The McRoberts court reached this conclusion based primarily upon 28 U.S.C. § 586(e)(2)'s "payment" language and other "payment" language in the Bankruptcy Code rather than the "under plans" language discussed above. See id. However, this rationale provides additional support for the conclusion that the insurance proceeds paid to the secured creditor in the instant case are not subject to the Trustee fee. Chapter 13 bankruptcies involve restructuring debt and establishing a plan to make monthly payments out of the debtor's future earnings. See id. at 881. This system revolves around the debtor making these monthly payments of "future earnings or other income" to the trustee for distribution on creditors' claims. 11 U.S.C. § 1322(a)(1). Thus, these monthly payments are much different than the payment of insurance proceeds at issue here; they are regular payments from the debtor's income rather than a one-time payment from an insurance company to replace destroyed collateral. As the McRoberts court stated, "the insurance proceeds are a substitute for the [creditor's] collateral, which was, effectively, surrendered upon its destruction." 226 B.R. 879 at 881. As such, the proceeds are substantively different from the type of "payments" that give rise to a fee for the trustee under 28 U.S.C.

§ 586(e)(2) even if they briefly pass through the trustee's hands, as they did in both in McRoberts and the instant case. Id.

**c. Policy Considerations Support the Conclusion That the Trustee is Not Entitled to a Statutory Fee on the Insurance Proceeds Paid to the Secured Creditor.**

Though the plain language of 28 U.S.C. § 586(e)(2) alone is sufficient to compel the Court to affirm the Bankruptcy Court's order with respect to the insurance proceeds at issue in this case, the question of whether the trustee is entitled to a fee also raises policy issues that should be addressed. Sikes correctly notes that Congress designed the bankruptcy trustee system to be financially self-sufficient, and that the trustee system relies upon the fees in 28 U.S.C. § 586(e)(2) to be self-sufficient. She also argues that "the ruling by the Bankruptcy Court could result in thousands of checks which must be held, monitored, and disbursed requiring countless time and labor for which the Trustee now cannot be compensated." Record Document 5 at 24.

Though the Court recognizes that the Bankruptcy Court's holding required the trustee to perform some administrative acts without compensation, the Court finds that the better policy in this instance weighs in favor of holding that the trustee is not entitled to a statutory fee on this insurance payment. From the limited information available to the Court from the record regarding the Bankruptcy Court's requirement that such insurance proceeds first be paid to the trustee, it appears that the trustee's duties regarding this insurance payment under the Bankruptcy Court's policy and order are rather limited. In fact, it appears that the trustee received the insurance payments and simply disbursed them to the secured party, making note of their receipt and reducing the amount owed to the secured creditor accordingly. Thus, though the Bankruptcy Court's order with respect to this

case certainly increased costs to the trustee, it appears that these costs were minimal, and this Court's holding on the second major issue in this case (the Bankruptcy Court's policy requiring payment to be processed through the trustee) resolves the issue of the trustee's entitlement to a fee for future instances of this nature. See Section IV, infra. Therefore, the Court finds that public policy also favors affirming the Bankruptcy Court's holding that the trustee is not entitled to collect a fee on this one-time payment of insurance proceeds to the secured creditor even though the trustee was required to briefly administer these funds.

## II. The Bankruptcy Court's Policy Requiring Payment of Insurance Proceeds for Destroyed Collateral to the Trustee Is Not Necessary Under the Bankruptcy Code.

The second issue in this appeal is Sikes' challenge to the Bankruptcy Court policy giving rise to the question of the trustee's entitlement to the statutory fee.[4] As discussed, the debtor's plan itself mandates that secured creditors be the designated payees of insurance on collateral and that they are "to receive payment in the event of loss." Record Document 2-2 at 13. Thus, without the Bankruptcy Court's policy requiring payment of the proceeds to the trustee for accounting purposes first, the issue of the trustee's entitlement to a fee would never have arisen.

In its decision in the similar case of In re James, the Bankruptcy Court stated that

[4]The Bankruptcy Court's order does not actually order the trustee to receive the proceeds of the insurance policy, as the trustee had already received these payments pursuant to the Bankruptcy Court's longstanding policy requiring the trustee to receive them. See Record Document 1-1. However, the Trustee has challenged this policy and argues that it should be reversed. See Record Document 11 at 21-25. Therefore, the Court considers the challenge to the policy itself to be the second issue presented on appeal even though the trustee was never directed to receive the proceeds in the actual order from which this appeal is being taken.

this policy "ensures that all parties, including the debtor, secured creditors and unsecured creditors, only receive funds to which they are entitled . . . [and] ensures accurate record keeping to which the Court, creditors and the debtor may access and on which they may rely." 2015 Bankr. LEXIS 1795 at *5-6. The Bankruptcy Court emphasized that "having a centralized database which can be easily accessed, and which is accurate, is of the utmost importance to the Court in both reviewing and evaluating cases." Id. at 6.

First, the Court notes that the Bankruptcy Code allows for a direct payment of collateral from a debtor to the holder of the security interest in the collateral. 11 U.S.C. § 1325(a)(5)(C) ("the court shall affirm a plan if . . . with respect to each allowed secured claim provided for by the plan . . . the debtor surrenders the property securing such claim to such holder"). Obviously, in the instant case it is the insurance company that would actually make the payment of the insurance proceeds to TD Auto Finance, but such a payment would be at the direction of Samuel under his Chapter 13 plan. See Record Document 2-2 at 13. Thus, under these circumstances, the Code imposes no requirement that the trustee first receive collateral before it is turned over to a secured creditor.

Second, many courts that have addressed the argument that the trustee is required to receive insurance payments for destroyed collateral before the payments are relayed to the correct parties have held that there is no such requirement. The trustee in McRoberts argued both that he should receive the statutory fee as discussed above and that it was necessary for the insurance proceeds for the destroyed collateral to be paid to the trustee first. 226 B.R. 879 at 882. He argued that "if creditors are permitted to receive the insurance proceeds without trustee intervention, there will be no way of monitoring what creditors have received, and this could result in overpayments." Id. The court rejected this

argument, stating that this concern could "be easily remedied by requiring creditors to provide an accounting to the trustee of any insurance proceeds they receive." Id. This policy would ensure that the creditors receive no more than they are entitled to receive without creating any unnecessary costs. See id.

The trustee in In re Gregory made a similar argument, which that court also rejected. 143 B.R. 424 (E.D. Tex. 1992). There, the Chapter 13 debtors sought to sell their home to satisfy a nondischargeable tax debt owed to the IRS and directly pay the amount of the tax debt to the IRS. See id. at 425. The trustee objected to this plan, arguing in part that "absent his control of the receipt and disbursement of the payment to IRS, he will never be in a position to certify to the court that payments under the plan are complete and that all priority claims are paid." Id. at 427. The Court rejected this argument, stating that the trustee had not demonstrated how the administration of the bankruptcy estate would be assisted in any way by requiring the debtors to funnel their payment to the trustee. See id. at 428. Rather, considering the sophistication of the creditor receiving the payment, the fact that the payment was a single payment from one source, and the lack of impairment of the trustee's ability to perform his role, the court held that it was unnecessary to require the trustee to receive the payment first. See id. at 427-28.

The instant case similarly demonstrates that the Bankruptcy Court's policy, while well-intentioned, actually gives rise to more problems than it solves. Though the costs involved for the trustee are relatively low, they are unnecessary. As the McRoberts court pointed out, the accounting concerns behind this policy can be remedied by requiring secured creditors like TD Auto Finance to provide an accounting to the Bankruptcy Court of any insurance proceeds received. 226 B.R. 879 at 882. TD Auto Finance, like most

secured creditors, is a sophisticated party that is certainly capable of providing such an accounting. Unlike the trustee in In re Gregory, Sikes actively supports this solution and makes no argument that this method of paying insurance proceeds to secured creditors impairs her ability to perform her role. 143 B.R. 424 at 427; see Record Document 5 at 23-24. Samuel also argues that this policy is unnecessary. See Record Document 7 at 7. Therefore, the Court finds that the Bankruptcy Court's finding/requirement that the trustee must receive insurance proceeds before paying them to creditors, which was based on the policy that required payment of the secured creditor's portion of the insurance proceeds to Sikes, should be reversed. This matter is remanded such that a written policy consistent with the instant opinion shall be implemented by the Bankruptcy Court.

**CONCLUSION**

For the reasons set forth above, the ruling issued May 29, 2015, by Bankruptcy Judge Jeff Norman is **AFFIRMED IN PART** and **REVERSED IN PART**. This matter is remanded to the Bankruptcy Court for the purpose of implementing a written policy consistent with the instant opinion.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 28th day of September, 2016.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE